Paula C. Salazar, CA Bar #50124 (*Pro Hac Vice* Pending)
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Phoenix District Office
3300 N. Central Ave., Ste. 690
Phoenix, AZ 85012
Telephone: (602) 661-0021
Email: paula.salazar@eeoc.gov
(*Pro Hac Vice Motion Pending*)

Attorney for Plaintiff

Eric Heimann
Acting United States Attorney
C. Levi Martin, WY Bar # 6-3781
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82004-0668
Telephone: (307) 772-2124
Email: christopher.martin@doj.gov

Associate Local Counsel for Plaintiff

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2024 SEP 30 AM 9:32
MARGARET BOTKINS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT
FOR THE WYOMING

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**WALLER'S TRUCKING COMPANY, INC.,**<br>Defendant. | CIVIL ACTION NO. 24-CV-197-SWS<br><br>**COMPLAINT** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and to provide

1

appropriate relief to Charging Party, Lizabeth Porter ("Porter") and a class of other aggrieved individuals harmed by the unlawful employment practices described. As alleged with greater particularity in paragraphs below, the Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Waller's Trucking Company, Inc. ("Defendant"), through its owner Norman Waller ("Waller"), subjected its female employees, including Charging Party Lizabeth Porter, to a hostile work environment and sex discrimination in the terms and/or conditions of employment on the basis of sex, female, and constructively discharged Lizabeth Porter and other females employees.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Wyoming and venue properly lies in the District of Wyoming.

## PARTIES

3.  Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant, a Wyoming Domestic Profit Corporation, has continuously been doing business in the State of Wyoming and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Defendant employed Charging Party Lizabeth Porter and the class of other aggrieved individuals adversely affected by the alleged unlawful employment practices.

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Porter filed a charge with the Commission alleging violations of Title VII by Defendant.

8. The Commission investigated the charge of discrimination.

9. On June 11, 2024, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated.

10. The Letter of Determination invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

11. On August 22, 2024, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

### Waller's Trucking Company, Inc.

13. Defendant Waller's Trucking Company, Inc. is a Wyoming Domestic Close Corporation Profit Corporation and has operated a trucking company in Marbleton, Wyoming since June 16, 2009.

14. Defendant's trucks carry machinery, large objects, oilfield equipment, and large quantities of water.

15. Waller serves as President and owner of Defendant.

16. Waller's wife, Paulette Waller, serves as Treasurer, Secretary, and Human Resources Representative for Defendant.

### Lizabeth Porter

17. Defendant hired Porter as a driver on February 11, 2017.

18. As a driver for Defendant, Porter drove 18-wheelers including heavy haulers, belly dumpers, and tankers.

19. Prior to Porter's employment with Defendant, she obtained her CDL Class A driver's license and received training in defensive driving.

20. Porter had experience driving straight trucks, tractors and semi-trailers, tractors-two trailers, motorcoach school buses (8+ passengers), and motorcoach school buses (15+ passengers).

21. As a driver, Porter was directly supervised by Waller, the owner of the company.

22. As the owner of the company, Waller had authority to hire, fire, and discipline employees.

23. Waller began to sexually harass Porter soon after she started her employment.

4

24. During Porter's employment with Defendant, Owner Waller subjected her to near-daily inappropriate, unwelcome, and offensive sexual comments and conduct.

25. Waller's stream of sexually harassing comments was frequently made in front of Porter's colleagues and other drivers, in-person, and over inter-truck CB radio.

26. During Porter's employment with Defendant, Waller made frequent, unwelcome, and offensive sexual comments about her appearance.

27. These offensive, near-daily sexual comments included, but are not limited to, the following:

    a. "Too bad you're not wearing a skirt with no panties."

    b. "Make sure you wear a tank top so your boobies show."

    c. "You need to wear booby shirts so I can get more business."

    d. "Your cleavage looks good today."

    e. "Your legs look great today."

28. During Porter's employment with Defendant, Owner Waller made repeated, unwelcome, and offensive sexual propositions to her.

29. These offensive, frequent sexual propositions included, but are not limited to, the following:

    a. "Sure wish you would wrap those long legs around me."

    b. "We need adjoining rooms; if not, I'm going to cut a hole in the wall."

    c. "No good morning kisses?"

    d. When Porter stated she needed a shower after a long drive and before a team dinner, Waller responded, "I have a clean towel, I'll come dry you off."

30. Porter found Waller's sexual comments and sexual behavior to be unwelcome, uncomfortable, and offensive.

31. Waller's sexual comments and sexual behavior towards Porter continued despite Porter's repeated requests to Waller that he stop.

32. Specifically, Waller continued to subject Porter to regular, frequent, unwelcome, and offensive sexual comments and conduct.

33. On or around June 2018, Waller stated over the CB radio where Porter and multiple colleagues could hear, "Normal people eat bananas; [Porter] sucks on them," in a sexually suggestive manner.

34. In 2018, Waller bought Porter a vibrating toothbrush and told her it would be good for "your teeth or any other body part."

35. On or around June 2019, Waller referred to Porter as an "easy lot lizard but not worth a damn" at a company safety meeting with Porter's colleagues.

36. "Lot lizard" is a highly derogatory term for a sex worker or prostitute used within the trucking industry.

37. On more than one occasion, at least one male employee told Waller that he could not speak to Porter in his sexually harassing manner.

38. In response, Waller would reply, "I'm 72 years old. I can say whatever the hell I want."

39. Waller's sexually harassing comments occurred on a near-daily basis and sometimes multiple times per day during the times that Porter and Waller were scheduled on a job together.

40. Waller organized all driver job schedules, including Porter's schedule.

41. For overnight out-of-town jobs that required only two drivers, Waller would usually schedule himself with Porter, meaning that the two of them would stay in the same motel in separate rooms.

42. Waller would schedule himself on overnight out-of-town jobs with Porter at least weekly during the summer season.

43. While at these motel stops, Waller would state that they needed adjoining rooms or else he would cut a hole in the wall.

44. Porter understood Waller's comment about cutting a hole in the wall to be a sexual threat.

45. While on the road, it is common for drivers working a job together to eat meals together when the job requires an overnight motel stay.

46. During these meals with fellow drivers, it was common for Waller to drink several alcoholic drinks at dinner.

47. Due to Waller's habitual sexual threats about adjoining rooms and his frequent intoxication at dinners, Porter often felt scared for her safety when staying at the same motel as Waller.

48. Porter requested changes in her schedule so she would not be forced to go on overnight out-of-town jobs alone with Waller.

49. Defendant, however, denied her requests to change her schedule so that she would not be scheduled on jobs with Waller.

50. On at least one occasion, Waller physically grabbed Porter's belly without her consent.

51. During Porter's employment, on at least five occasions, she complained of Waller's conduct to Paulette Waller, Waller's wife and Defendant's Treasurer, Secretary, and Human Resources representative.

52. Paulette Waller simply laughed when Porter complained to her about the near-daily sexual harassment to which Waller subjected her.

53. Paulette Waller did nothing to address Porter's complaints and Waller's harassment continued unabated.

54. On or around September 5, 2019, Porter sent a text message to Waller requesting a day off to attend her teenage daughter's graduation from cosmetology school.

55. Waller replied granting Porter's request for a day off and added that he would send a card to Porter's daughter, asking Porter "how much" he should include as a gift.

56. Porter felt highly uncomfortable with Waller sending any gift to her teenage daughter and did not reply.

57. In response to Porter's silence, Waller sent another text message stating that he would "send a lace nittie [sic] [as a gift] but she'd probably take it wrong n [sic] I'd get the pee slapped out of me."

58. Porter replied to Waller's text message with a message stating, "I will endure your unsolicited sexual remarks and advances no longer. I quit."

59. Waller replied stating, "That was not a sexual remark."

### Other Aggrieved Individuals

60. At least one other female employee employed by Defendant was routinely sexually harassed by Owner Waller.

61. On multiple occasions, Waller instructed this female employee along with other female employees to "wear booby shirts" to attract more business to Defendant.

62. On at least two occasions, Waller instructed this female employee to "dress sexy so [he] can get a [trucking] job."

63. On at least three occasions, Waller lewdly commented about this female employee's breasts in front of her colleagues, stating, "[i]f I had a pair like that, I would hang them; can you show me?"

64. Waller once told this female employee that he was "not going to fix the AC in [her] truck so [she] can wear shirts that show [her] boobs."

65. This female employee found Waller's sexual comments to be unwelcome and offensive.

66. This female employee expressed her discomfort with Waller's sexual harassment directly to him, and on at least one occasion, did so in a public setting in front of her colleagues.

67. Despite this female employee's complaints, Waller's sexual harassment did not stop.

68. After this female employee publicly spoke out against the sexual harassment she suffered from Waller, she was scheduled for half as many shifts as other similarly situated drivers.

69. On or around October 2019, this female employee submitted her resignation due to the sexual harassment she suffered from Waller and her drastically diminished work schedule.

70. Upon information and belief, Waller similarly sexually harassed other female employees at Defendant.

## STATEMENT OF CLAIMS

71. Since at least February 2017 to present, Defendant has engaged in unlawful employment practices against Porter and a class of other aggrieved individuals in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) by sexually harassing them and constructively discharging them.

## FIRST CLAIM FOR RELIEF
### Sexual Harassment/Hostile Work Environment
### (42 U.S.C. § 2000e-2(a))

72. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

73. The EEOC brings this first claim for relief on behalf of Porter and a class of other aggrieved female employees.

74. Defendant discriminated against Porter and a class of other aggrieved female employees in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by subjecting them to sexual harassment because of their sex, female, creating a hostile work environment.

75. The offensive sexual conduct described in the preceding paragraphs was unwelcome to Porter and other aggrieved female employees.

76. Defendant subjected Porter and other women to sexual harassment that was sufficiently severe or pervasive enough to alter the terms and conditions of their employment.

77. Waller, as owner of Defendant, directly supervised and had the authority to take tangible employment actions, such as firings, against employees, including against other aggrieved female employees.

78. Owner Waller subjected a class of aggrieved female employees to unwelcome sexual comments, jokes, innuendos, propositions, and touching.

79. Defendant is strictly liable for the creation of a sexually hostile work environment because Owner Waller is an alter ego of Defendant.

80. The sexual harassment of Porter and other female employees was open, notorious, and widely known among employees at Defendant.

81. Porter and other female employees reported the sexual harassment to Defendant.

82. Defendant knew or should have known about the sexual harassment suffered by Porter and other aggrieved female employees because of the reports it received, the open and notorious nature of the harassment, the pervasiveness of the harassment and the widespread knowledge of the harassment.

83. Despite receiving complaints and having knowledge of Waller's sexually inappropriate conduct, Defendant failed to take adequate actions to stop, prevent, or remedy the sexual harassment of Porter and other aggrieved female employees.

84. The effect of the practices complained of above has been to deprive Porter and a class of other aggrieved female employees of equal employment opportunities and otherwise affect their status as employees because of their sex, female.

85. The unlawful employment practices complained of in the forgoing paragraphs were intentional.

86. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Porter and other aggrieved female employees.

## SECOND CLAIM FOR RELIEF
### Constructive Discharge
### (42 U.S.C. §2000e-2(a))

87. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

88. The EEOC brings this second claim for relief on behalf of Porter and a class of other aggrieved female employees.

89. Porter and other female employees were constructively discharged in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

90. Defendant's discriminatory acts made working conditions so difficult that Porter and other female employees reasonably felt compelled to resign.

91. The effect of the practices complained of in the foregoing paragraphs has been to deprive Porter and a class of other female employees of equal employment opportunities and otherwise adversely affect their status as an employee because of their sex, female.

92. The unlawful employment practices by Defendant described above were intentional.

93. The unlawful employment practices by Defendant complained of herein were done with malice or reckless indifference to Porter's and the aggrieved individuals' federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in sexual harassment or any other employment practice which discriminates on the basis of sex.

  B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices, including sex discrimination, especially providing sexual harassment training to its managers, supervisors, and non-supervisory employees.

  C. Order Defendant to make whole Porter and other aggrieved individuals, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to lost wages, front pay, reinstatement, benefits, and compensation for all monetary losses.

  D. Order Defendant to make whole Porter and other aggrieved individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs above, including job search expenses in amounts to be determined at trial.

  E. Order Defendant to make whole Porter and other aggrieved individuals by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs above, including inconvenience, emotional pain, suffering, anxiety, stress, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

  F. Order Defendant to pay Porter and other aggrieved individuals punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

  G. Grant such further relief as the Court deems necessary and proper in the public interest.

  H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its complaint.

Eric Heimann
Acting United States Attorney

*signature*

C. Levi Martin
Assistant United States Attorney


EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

Karla Gilbride
General Counsel

Christopher Lage
Deputy General Counsel

Gwendolyn Reams
Associate General Counsel

Mary Jo O'Neill
Regional Attorney

Laurie Jaeckel
Assistant Regional Attorney


/s/ *Paula Salazar*
Paula Salazar
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
3300 N. Central Ave., Suite 690
Phoenix, AZ 85012

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorney. Duplicate service is not required on the General Counsel, Deputy General Counsel, and Associate General Counsel in Washington, D.C.